Freeman, J.,
delivered the opinion of the Court.
This bill is filed by the legatees of John Evans, deceased, alleging that the land of the testator was by his wifi, directed to be sold by his executor, Geo. W. Armstrong, at public sale, and the proceeds divided among complainants, who are married women and infants, as appears from the bill, and that said executor did, on the 18th of November, 1856, sell the land on which said Evans had resided in his lifetime, at public sale, at the price of seventy-five dollars and fifty cents per acre, it being assumed that there were only one hundred acres in the tract. One Robert H. Bradley became the purchaser. The bill alleges that in fact the tract contained between one hundred and twenty-five and one *56 hundred and thirty acres, a surplus of twenty-five or thirty acres more than was disposed of. It is further alleged in the bill, that the executor Armstrong and the purchaser both knew of the large surplus in the tract, and that they fraudulently combined to make the sale, to the injury of the complainants, and that they neglected and refused to have the land surveyed. The prayer of the bill is that Bradley be compelled to reconvey to complainants the excess over and above the one hundred acres purchased, the same to be allotted to them from that portion of the tract where they can enjoy the benefit in due proportion of wood and water and timber, together with the improvements; also for an account of rents for the excess over the one hundred acres, or that the purchaser be required to make compensation for the surplus over and above the one hundred acres purchased, at the same price per acre which he paid for the one hundred acres, at the option of complainants; also for general relief.
The answer of the defendants denies with emphasis all fraud or combination, and in a word, all the material allegations of the bill, except the fact that the land was bought by the acre and not in gross, at the price stated.
This is distinctly admitted by the answer of Bradley. The deed made by Armstrong describes the land by metes and bounds, and as containing by estimation, one hundred acres, be the same more or less, and recites the fact that it had been sold and struck off to Bradley for the price of seventy-five dollars and fifty cents per acre.
*57 The Chancellor dismissed complainants’ bill, and an appeal is taken by them to this Court. The testimony shows clearly that there was no fraud or combination on the part of the defendants, and with equal clearness that the tract of land was sold as containing one hundred acres, and that both parties honestly believed, the one that he was selling, and the other that he was buying, one hundred acres of land, at seventy-five dollars and fifty cents per acre. The land was bid off for Bradley by an agent at the sale, and was run up by Williams, one of the complainants, to the price at which it was struck off. It is clearly shown that he was insolvent, and could not have complied with the terms of sale. And it satisfactorily appears that this was done by him in order to make the land bring an extra price, as it seems to have been known that Bradley was anxious to buy it on account of its location adjoining to his own land, and for the timber on it¿ his own land being very scarce of timber.
It is clear that both parties, as we have said, thought that there were only a hundred acres in the tract, and that it has been made certain by naeasurment of the County Surveyor that the tract actually contains one hundred and thirty-five acres and a fraction within its boundaries.
The first question presented is as to the right of complainants to any relief at all, on the ground that the title to the land was in the executor, that he had the right to sell, and has done so, and the complainants are but legatees of the fund arising from *58 the sale, and have no title or right in the land as such.
It is clear that the devise of the land to be sold and the proceeds to be paid to the parties, was in equity a conversion of the land into personalty or monfey, and that the parties take as legatees, and not as devisees of the fealty. But a court of equity looks at the substance and not at the form of things. Complainants were the beneficiaries of the trust imposed on the executor, and as such have the right to come into a court of equity in aid of its faithful and proper execution, that they may receive the full benefit of the provision made for them in the will. The executor, it is true, held the legal title, but complainants were the parties having the substantial interest. We therefore think that they might well file this bill, so far as this objection goes.
But to the main question involved in this case. It is clear there was a mutual mi,stake as to the quantity of land contained in this tract, and that the defendant, Bradley, obtained by his purchase thirty-five acres more than he purchased, or understood to be within the boundaries at the time. Can he be compelled, at the election of complainants, to take and pay for this surplus at the same rate per acre that he was to pay for the one hundred acres? We are unable to find any sound principle on which we can rest such a holding. It would be to make a new contract by decree of a court of equity, not to enforce one.
It is clear that if there had been less than the hundred acres bought, and the deficiency had been *59 of a material part, sucb as had been an inducement to the trade, the vendee might have come into a court of equity and asked for a rescission of the contract on the ground of mistake, as in the case of a sale of a. tract of land as containing eight acres, where there were but four acres; and this would be so, says Mr. Story, although the land was described as being eight acres, more or less — these words, “more or less,” being confined to a reasonable allowance for small errors in surveys and variations in instruments. 1 Story Eq., s. 141.
If such deficiency had been found here as there is surplus, the vendee might well, on a bill for specific performance, have compelled an abatement of the price as to the deficiency; under the rule laid down in Miller v. Bentley, 5 Sneed, 674.
But this case is different. The complainants seek either to have the thirty-five acres of land laid off to them, or to compel the party purchasing to pay for it at seventy-five dollars and fifty cents per acre. The defendant, in his answers, objects to this, and tenders the land back, only asking his purchase money, claiming that he got a bad bargain even with the surplus. As we understand it, the complainants are unwilling to accept a rescission of the contract, as from the proof they would probably lose largely by it, the land not now being worth in the market as much as when .sold in 1856. The parties, however/ are clearly entitled to some relief, as the defendant Bradley can not be permitted to hold the thirty-five acres of land (over one-third more than he purchased), and not pay *60 for them. This would be to give him something for nothing, the land without the payment of its price. He, however, insists that he paid for the land largely more than the value of the whole tract. That may be so, and we think the proof shows that he paid at least ten dollars per acre more than the market value of the land. But it is equally clear that he did this because of the contiguity of the land to his own, and his eagerness to possess it. He can ask no relief on account of the high price given for the land, or the other fact insisted on, that Williams ran it up on him at the sale.
It was at his own option to buy it at that price, and he seems to have decided to take it, after consideration of all the circumstances of the case. We can not compel him to take ’ the thirty-five acres surplus at seventy-five dollars and fifty cents per acre, because he did not so contract or agree, but neither can we allow him to keep it without paying for it.
In view of all the facts of the case, we conclude, that, nothwithstanding the difficulties in the way, the relief to which complainants are entitled is, that Bradley shall have the one hundred acres bought by him, laid off adjoining to his own land, in the most convenient from, so as to meet his purpose and expectation of thus adding to his own tract of land these one hundred acres, and that the surplus thirty-five ’acres, after Bradley shall thus get what he purchased, in accordance with the spirit of his contract, shall be sold and the proceeds divided among complainants according to their respective interests.
*61 Eor tbe purpose of laying off these oue hundred acres commissioners will be appointed, who will report to the present term of this Court, when proper orders for sale can be made.
Directions more specific as to the mode of laying off the one hundred acres, can be inserted in the decree. The question of costs will be reserved till the coming in of report. ■